UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| TANIS CONROY,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF VANCOUVER and JEFFREY WILKEN,<br><br>      Defendants. | No.<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that defendant CITY OF VANCOUVER, by and through its undersigned counsel, hereby removes the above-captioned case to the United States District Court for the Western District of Washington in Tacoma pursuant to 28 U.S.C. § 1446, and respectfully state:

    1.    Defendant City of Vancouver was served with a copy of the summons and complaint on December 14, 2009. Copies of the Summons and Complaint are attached hereto at Exhibit A. As of the present date, the above-action has not yet been filed in the Superior Court of the State of Washington for Clark County, or any other court.

    2.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the Defendant City of Vancouver has received a copy of the summons and complaint through service or otherwise.

NOTICE OF REMOVAL - 1

**PATTERSON BUCHANAN**
**FOBES LEITCH & KALZER, INC., P.S.**

2112 Third Avenue, Suite 500
Seattle WA 98121 Tel. 206.462.6700 Fax 206.462.6701

3. Prior to serving Defendant City of Vancouver with a copy of the Summons and Complaint, Plaintiff served a Notice of Tort Claim under RCW 4.96.020 on the City of Vancouver's designated agent. In that tort claim, Plaintiff alleges that she is a citizen of the State of Oregon. A copy of the tort claim is attached as Exhibit B.

4. Defendant City of Vancouver is a municipal corporation which is incorporated in Washington with its principal place of business in Washington. Under applicable tests as applied by the United States Court of Appeals for the Ninth Circuit, defendant City of Vancouver is a citizen of Washington.

5. Defendant Jeffrey Wilken is a citizen of the State of Illinois.

6. Defendant City of Vancouver is not aware of service of a Summons and Complaint on defendant Wilken, and therefore his joinder is not required in this removal. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir.1984) *overruled on other grounds by Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.1988)) (holding that "a party not served need not be joined; the defendants summonsed can remove by themselves.").

7. Total diversity of citizenship thus exists between the parties, and the amount of controversy exceeds the sum or value of $75,000. Accordingly, this action may be removed to federal court.

8. A copy of this Notice of Removal is being served upon counsel for plaintiff and defendant Wilken.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1).

10. The above-captioned action may be removed to this Court pursuant to 28 U.S.C. § 1441(b). This Court is a district court of the United States for the district and division

embracing the place where the state court action is pending, and is therefore the appropriate Court for removal pursuant to 28 U.S.C. § 1441.

DATED on January 12, 2010.

          PATTERSON BUCHANAN
FOBES LEITCH & KALZER, INC., P.S.

By:     /s/ Michael A. Patterson
Michael A. Patterson, WSBA No. 7976
Patricia K. Buchanan, WSBA No. 19892
Sarah S. Mack, WSBA No. 32853
Attorneys for Defendant City of Vancouver
2112 Third Ave., Suite 500
Seattle, WA 98121
Phone: 206-462-6700
Fax: 206-462-6701
map@pattersonbuchanan.com
pkb@pattersonbuchanan.com
ssm@pattersonbuchanan.com

NOTICE OF REMOVAL - 3

PATTERSON BUCHANAN
FOBES LEITCH & KALZER, INC., P.S.
2112 Third Avenue, Suite 500
Seattle WA 98121 Tel. 206.462.6700 Fax 206.462.6701

## CERTIFICATE OF SERVICE

I, Pamela E. Buckley, hereby certify that on the date below I mailed a copy of the foregoing document and all referenced exhibits to plaintiff's counsel and the other defendant (at his last known address) as listed below:

Mr. Thomas S. Boothe
Attorney for Plaintiff Conroy
7635 SW Westmoor Way
Portland, OR 97225-2138

Mr. Jeffrey Wilken
203 Fox Run Drive
Elwood, IL 60421-6050

I certify under penalty of perjury under that the above is correct and true.

Executed in Seattle, Washington, on January 12, 2010.

                                            /s/ Pamela E. Buckley
                                            Pamela E. Buckley
                                            Legal Assistant to Sarah S. Mack

# EXHIBIT A



RECEIVED
DEC 1 4 2009
☐ CITY MANAGER
☐ MAYOR
CITY OF VANCOUVER

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| TANIS CONROY<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF VANCOUVER and JEFFREY WILKEN,<br><br>    Defendants. | Case No.<br><br>**SUMMONS** |

TO:  City of Vancouver.
    Mayor Royce Pollard
    (3rd Floor)
    210 E. 13th St.
    Vancouver, WA  98660

A lawsuit has been started against you in the above-entitled Court by Plaintiff. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with the Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the Plaintiff within twenty (20) days after the service of this Summons, if served within the State of Washington, or within sixty (60) days if served outside the State of Washington, excluding the date of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what they ask for because you have not responded. If you serve a Notice of Appearance on the undersigned attorney, you are entitled to notice before default judgment may be entered.

Page  1  -SUMMONS

1  You may demand that Plaintiff file this lawsuit with the Court. If you do so, the demand
2  must be in writing and must be served upon the Plaintiff. Within fourteen (14) days after you
3  serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this
4  Summons and Complaint will be void.

5  If you wish to seek the advice of an attorney in this matter, you should do so promptly so
6  that your written response, if any, may be served on time.

7  This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State
8  of Washington.

9  DATED: December 11, 2009

10
11  *Thomas S. Boothe*
     Thomas S. Boothe, WSB No. 21759
12   Attorney for Plaintiff
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Page  2  -SUMMONS

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800



IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| TANIS CONROY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF VANCOUVER and JEFFREY WILKEN,<br><br>　　　　　Defendants. | Case No. [to be filed]<br><br>**COMPLAINT**<br><br>**[Jury Trial Demand]** |

Plaintiff alleges:

## I.

## PARTIES

1.1　Plaintiff.

　　1.1.1　Plaintiff Tanis Conroy is an employee of the State of Washington, Department of Corrections. At all material times, plaintiff was assigned to the City of Vancouver to facilitate service of warrants.

1.2　Defendants.

　　1.2.1　Defendant City of Vancouver is a governmental entity in the state of Washington.

　　1.2.2　Defendant Jeffrey Wilken was, at all material times, a sworn police officer employed by the City of Vancouver Police Department, assigned to a Neighborhood Resource Team, West Precinct ("NRT").

Page   1   -   COMPLAINT

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

## II.

## JURISDICTION AND VENUE

2.1  Subject matter jurisdiction, personal jurisdiction and venue are properly before this Court.

## III.

## JURY TRIAL

3.1  Plaintiff hereby asserts her right to present this matter for trial by a jury.

## IV.

## FACTS COMMON TO ALL CLAIMS

4.1  In April 2008, plaintiff was on surveillance duty with defendant Wilken. While in the car, defendant Wilken asked plaintiff whether she knew the meanings of sexually derogatory slang terms such as a "chilidog" or a "donkey punch." When plaintiff attempted to ignore defendant Wilken, defendant Wilken persisted and volunteered explicitly detailed descriptions. Plaintiff told defendant Wilken that he was "sickening" and that plaintiff "[didn't] want to hear anymore".

4.2  On May 21, 2008, while the NRT was serving a drug search warrant at a known drug user's residence, plaintiff was searching the master bedroom with defendant Wilken. Without warning, defendant Wilken came from behind plaintiff and covered plaintiff's head with an article of clothing. Upon removing the item from her head, plaintiff realized that defendant Wilken had placed a women's thong over her head. Plaintiff was distressed because she did not know whose thong it was, or whether the thong was clean or worn, and what communicable illnesses their owner may have, plaintiff confronted defendant Wilken, telling him she was upset about what he had done. Defendant Wilken responded sarcastically, "I took them from the clean pile." There was no "clean pile" present. Sgt. Chylack and Offc. Fili Matua, who were also in the room, witnessed the event and laughed along with defendant

/ / / / /

Page  2  -  COMPLAINT

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

1   Wilken about the assault. Plaintiff was embarrassed and offended by this event, left the house
2   and returned to the van to compose herself and avoid making a bigger incident.
3       4.3   In June 2008, the NRT had returned to the Vancouver Police West Precinct
4   serving a search warrant with plaintiff's assistance. Plaintiff was outside speaking with VPD
5   Sgt. Duane McNicholas, who was in charge of the NRT, when defendant Wilken walked up to
6   plaintiff, grabbed her by the throat and squeezed. The contact lasted only a second. It
7   shocked plaintiff. Plaintiff told defendant Wilken that he scared her. Defendant Wilken's
8   response was a cold "I know", then he walked away.
9       4.4   Soon after defendant Wilken had assaulted plaintiff, plaintiff asked VPD Offc.
10  Spencer Harris if he saw any red marks on her neck. Plaintiff told Offc. Harris about what
11  had happened outside. Offc. Harris was dismissive of the event. At this point, plaintiff
12  stopped talking about defendant Wilken's inappropriate actions because she felt "no one
13  wanted to hear about it", and because her peers and supervisor's reactions led her to fear
14  retaliation and a souring of the work environment.
15      4.5   Throughout July of 2008, defendant Wilken and plaintiff were alone together in
16  the team's undercover vehicle. Defendant Wilken frequently made sexually derogatory
17  comments to plaintiff. Because plaintiff's efforts to alert coworkers and plaintiff's VPD
18  supervisor had failed, plaintiff did her best to ignore defendant Wilken in the hope that he
19  would give up and leave her alone. On more than one occasion, defendant Wilken claimed
20  plaintiff told him she wanted to have sex with him. Plaintiff told defendant Wilken clearly that
21  she did not. Defendant Wilken reacted angrily and repeated to plaintiff several times that she
22  did tell him that she wanted to have sex with him. Because arguing with defendant Wilken was
23  hopeless and her supervisor had laughed at defendant Wilken's previous assault, plaintiff again
24  tried to ignore defendant Wilken and focus on her job. Defendant Wilken told plaintiff that she
25  had told him that she "wanted to fuck him". Plaintiff told him that she did not say that, but
26  defendant Wilken continued to insist that she had. Defendant Wilken angrily raised his voice

Page  3  -  COMPLAINT

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

1  and repeatedly insisted that plaintiff had told him she wanted to "fuck him". Plaintiff felt
2  increasingly unsafe.
3       4.6   On July 15, 2008, plaintiff, defendant Wilken, VPD Sgt. Chylack and
4  VPD/NRT officers Dustin Nicholson and Frank Gomez finished a controlled narcotics buy and
5  were standing in front of the East Vancouver Precinct waiting for Offc. Gomez to get
6  undercover clothing. After waiting for minutes, defendant Wilken asked plaintiff if Gomez
7  could "fit into [her] jeans." Plaintiff responded by saying, "Come on Jeff, are you serious?"
8  Defendant Wilken then asked plaintiff, "Can I get into your pants?" Plaintiff told him "No".
9  VPD Sgt. Chylack and Nicholson and Gomez were all present, but again none of them
10 corrected defendant Wilken or said or did anything to suggest that Wilken's behavior was
11 anything outside of acceptable practice.
12      4.7   On July 16, 2008, the NRT served its last search warrant. Afterward, the group
13 went for lunch at Red Robin. They sat at a large table; defendant Wilken sat himself next to
14 plaintiff. Plaintiff tried to ignore him. While they got their wallets out to pay for their meals,
15 plaintiff took all of her credit cards out of her wallet while searching for the credit card she
16 intended to use to pay for her lunch. Defendant Wilken grabbed plaintiff's Victoria's Secret
17 credit card out of her hand; plaintiff immediately took it back. Defendant Wilken told
18 plaintiff, "let's go on a shopping spree, you can try on things and I will tell you what looks
19 good for Gordon." (Plaintiff's husband is Clark County Sheriff's Deputy Gordon Conroy.)
20 When plaintiff told defendant Wilken "no", defendant Wilken said, "come on, that's what
21 friends do for each other." Plaintiff responded, "who said we were friends?"
22      4.8   Plaintiff was embarrassed by the incident. Pete Muller, who was sitting across
23 from plaintiff, blushed and would not look at her after the incident. Later, in the NRT office
24 at the East Vancouver Precinct, plaintiff confronted defendant Wilken, telling defendant
25 Wilken that he had really embarrassed her. Defendant Wilken responded, "I know!"
26 /////

Page  4  -  COMPLAINT

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

4.9   On July 17, 2008, defendant Wilken, Sgt. Chylack and plaintiff were in a cubicle at the NRT office at the East VPD station. Defendant Wilken was harassing plaintiff. Plaintiff was embarrassed and upset. Plaintiff confronted defendant Wilken, which plaintiff had found to be an effective, though temporary, way to get defendant Wilken to leave her alone. As plaintiff was telling defendant Wilken to stop his crude behavior, defendant Wilken walked over to plaintiff's desk, picked up her handcuffs and handcuffed plaintiff's right hand to the arm of the chair she was sitting on. Defendant Wilken threw the handcuff key out of the cubicle. Plaintiff repeatedly attempted to pull her hand out of the handcuff and repeatedly told defendant Wilken to let her go. Plaintiff told defendant Wilken she was claustrophobic. In response, defendant Wilken walked over and tightened the handcuff around plaintiff's wrist, making it impossible for plaintiff to be released without the handcuff key. Using her feet to push the chair, plaintiff maneuvered towards Sgt. Chylack, whose back was turned to her. Plaintiff asked Sgt. Chylack for a handcuff key. Sgt. Chylack laughed, and told plaintiff that he "didn't have a key". Defendant Wilken walked over to plaintiff, while plaintiff was in front of Sgt. Chylack's desk and handcuffed plaintiff's free hand to the other arm of the chair. Defendant Wilken then pushed the chair and plaintiff around the office, despite plaintiff's protests and pleas to be released. Sgt. Chylack did nothing.

4.10   Defendant Wilken pushed plaintiff, who was still handcuffed to her chair, into the men's locker room sleeping area, and left her in the dark, unlit men's locker room. Defendant Wilken walked out, leaving plaintiff chained to the chair. Plaintiff worked the chair towards the door, worked the door open and got herself out of the locker room. As she left the locker room, plaintiff saw Sgt. Dave Henderson and asked him to help her get uncuffed from the chair. Sgt. Henderson reached for his keys and asked what was going on. Defendant Wilken told Sgt. Henderson "I'm just joking with her". Sgt. Henderson told defendant Wilken to "knock this shit off, it's not funny." Sgt. Chylack came around the corner and said "get her uncuffed". The incident was reported to Lieutenant John Chapman.

Page   5   -   COMPLAINT

1      4.11   Plaintiff has been advised that defendant Wilken was well-known for inappropriate and offensive behavior, which was nonetheless tolerated and encouraged by his supervisors. Defendant Wilken was reported to have publically defecated on request, including having defecated in a search warrant home and stuck a D.O.C. business card in the feces.

    4.12   After plaintiff filed her complaint, the Department of Corrections removed her from her station for her safety. Plaintiff is now fearful of retaliation by other officers because she still has City of Vancouver cases that she supervises, worries that when she is in the city of Vancouver she will receive delayed or no back-up from defendant Wilken's officer friends and supporters, and experiences continued distress that the VPD command staff has taken little action to correct defendant Wilken's behavior.

## FIRST CAUSE OF ACTION

### [Washington Law Against Discrimination]

    5.1   Plaintiff realleges paragraphs 1 through 4.12.

    5.2   The conduct of defendants and defendant City of Vancouver's employees and agents has violated the Washington Law Against Discrimination, RCW 49.60.010, *et seq.*

## SECOND CAUSE OF ACTION

### [Outrage/Intentional Infliction of Emotional Distress]

    6.1   Plaintiff realleges paragraphs 1 through 4.12.

    6.2   Defendants' actions were so outside the normal bounds of decency as to constitute the tort of outrage and demonstrate an intent to cause emotional distress in plaintiff.

    6.3   As a result of defendants' acts, plaintiff has sustained lost income, emotional distress, pain and sleeplessness and other manifestations of stress.

    6.4   As a direct and proximate result of defendants' conduct, plaintiff has suffered noneconomic and economic damages to be proved at the time of trial.

/////

/////

Page 6 - COMPLAINT

THOMAS S. BOOTHE
ATTORNEY AT LAW
7635 SW Westmoor Way, Portland, Oregon 97225-2138
Telephone (503) 292-5800

## THIRD CAUSE OF ACTION

### [Negligence]

7.1   Plaintiff realleges paragraphs 1 through 4.12.

7.2   Defendant City of Vancouver breached its duty to plaintiff including, but not limited to:

    7.2.1   Failing to adequately supervise its managerial employees;

    7.2.2   Tolerating, ratifying or otherwise condoning the wrongful behavior of defendant Jeffrey Wilken and other supervisory personnel;

    7.2.3   Failing to timely conduct a reasonable investigation and thereafter taking prompt, effective and appropriate corrective action upon gaining actual and/or constructive knowledge of the facts.

7.3   As a result of defendants' negligence, plaintiff has sustained lost income, emotional distress, pain and sleeplessness and other manifestations of stress.

7.4   As a direct and proximate result of defendants' conduct, plaintiff has suffered noneconomic and economic damages to be proved at the time of trial.

WHEREFORE, plaintiff prays for relief and judgment in favor of plaintiff and against defendants, and each of them, awarding plaintiff economic damages, plaintiff's reasonable costs, plaintiff's disbursements incurred herein, prejudgment interest, plaintiff's reasonable attorney fees, and such other and further relief as this Court deems just and equitable.

DATED: December 11, 2009

*Thomas S. Boothe*
Thomas S. Boothe, WSB No. 21759
Attorney for Plaintiff

Conroy.C (Complaint)

Page 7 — COMPLAINT

# EXHIBIT B

## TORT CLAIM NOTICE: Tanis Conroy

June 15, 2009

**TO          :**     City of Vancouver
               Tort Claim Agent
               Tim Haldeman
               2nd Floor
               610 Esther St.
               Vancouver, WA 98660

**Claimant   :**     Ms. Tanis Conroy

**Actual Residence
of Claimant :**     19739 Nevin Court
               Oregon City, OR 97045

**Claimant's
Residence for
Six Months
Prior to Time
Claim Arose :**     10311 NE 100th Ave.
               Vancouver, WA 98682

**Time, Date and Location of Incidents:**

The incidents upon which claimant's action will rely occurred from the spring of 2008 until present and are set forth in greater detail under Details of Incident. Quotations are claimant's present recollection of what was said by the speakers.

**Witnesses and Participants:**

Brian Billingsly, Tanis Conroy, Michael Chylack, Brian Ford, Jeremy Free, Leonard Gabriel, Frank Gomez, Beth Graves, Spencer Harris, Dave Henderson, Steve Lobdell, Fili Matua, Pete Muller, Dustin Nicholson, and Jeff Wilken.

**Details of Incident:**

Tanis Conroy is a Washington Department of Corrections officer. She supervises high risk offenders. Conroy was assigned to the Neighborhood Response Team ("NRT"), Vancouver East Precinct in December 2007.

1

In April 2008, Conroy was on surveillance duty with Offc. Jeff Wilken. While in the car, Wilken asked Conroy if she knew the meanings of sexually derogatory slang terms such as a "chilidog" or a "donkey punch." Conroy responded by ignoring Wilken. Wilken persisted, volunteereing explicitly detailed descriptions. Conroy told Wilken that was "sickening" and that she "[didn't] want to hear anymore".

On May 21, 2008, while NRT was serving a drug search warrant at 15715 NE 87th Circle, Conroy was searching the master bedroom with Wilken. Without warning, Wilken came from behind Conroy and covered her head with an article of clothing. Upon removing the article from her head, Conroy realized that Wilken had placed a pair of women's underwear (a thong panty) on her head. Conroy did not know whose panties these were or whether they were clean or worn. Conroy confronted Wilken, telling him she was upset about what he had done. Wilken responded by joking, "I took them from the clean pile." Sgt. Chylack and Offc. Fili Matua, who were also in the room, witnessed the event and laughed along with Wilken about the assault. Conroy was embarrassed and offended by this event. Conroy left the house and got into the van.

In June 2008, NRT (West Precinct) had finished serving a search warrant with Conroy's assistance and returned to the Vancouver Police West Precinct. Conroy was outside speaking with Duane McNicholas, the sergeant in charge of the Vancouver West NRT team, when Wilken walked up to Conroy, grabbed her by the throat and squeezed. The contact lasted only a second; it shocked Conroy. Conroy told Wilken that he scared her. Wilken's response was a cold "I know", then he walked away.

Soon after, Conroy asked Offc. Spencer Harris if he saw any red marks on her neck. Conroy told Harris about what had happened outside. Harris was dismissive of the event. At this point, Conroy stopped talking about Wilken's inappropriate actions because she felt "no one wanted to hear about it", because the reaction of her peers and supervisor led her to fear retaliation and a souring of the work environment..

Throughout July of 2008, Wilken and Conroy were alone together in the team's undercover vehicle. Wilken made sexually derogatory comments to Conroy. Because her efforts to alert coworkers and her supervisor had failed, Conroy did her best to ignore Wilken in the hope that he would give up and leave her alone. On more than one occasion, Wilken claimed Conroy told him she wanted to have sex with him. Conroy told Wilken clearly that she did not. Wilken reacted angrily and repeated to Conroy several times that she did tell him that she wanted to have sex with him. Because arguing with Wilken was hopeless and her supervisor had laughed at Wilken's previous assault, Conroy again tried to ignore Wilken and focus on her job. Wilken told Conroy that she had told him that she "wanted to fuck him". Conroy told him that she did not say that, but Wilken continued to insist that she had. Wilken angrily raised his voice and repeatedly insisted that Conroy had told him she wanted to "fuck him". Conroy felt increasingly unsafe.

On July 15, 2008, Conroy, Wilken, Sgt. Chylack and NRT officers Dustin Nicholson and Frank Gomez finished a controlled narcotics buy and were standing in front of the East Vancouver Precinct waiting for Gomez to get undercover clothing. (Gomez had just been patrolling, was wearing his uniform and needed someone to bring him some other clothes to wear while taking a suspect home.) After waiting for minutes, Wilken asked Conroy if Gomez

2

could "fit into [her] jeans." Conroy responded by saying, "Come on Jeff, are you serious?" Wilken then asked Conroy, "Can I get into your pants?" Conroy told him "No". Nicholson, Gomez and Sgt. Chylack were all present, but again no one said anything.

In mid July 2008, NRT was being disbanded. On July 16, 2008, the unit served their last search warrant. Afterwards, the group went for lunch at Red Robin. They sat at a large table; Wilken sat himself next to Conroy. Conroy tried to ignore him. While they got their wallets out to pay for their meals, Conroy took all of her credit cards out of her wallet while searching for the credit card she intended to use to pay for her lunch. Wilken grabbed Conroy's Victoria's Secret credit card out of her hand; Conroy immediately took it back. Wilken told Conroy, "let's go on a shopping spree, you can try on things and I will tell you what looks good for Gordon." (Conroy's husband is Clark County Sheriff's Deputy Gordon Conroy.) When Conroy told him "no", Wilken said, "come on, that's what friends do for each other." Conroy responded, "who said we were friends?"

Conroy was embarrassed by the incident. Pete Muller, who was sitting across from Conroy, blushed and would not look at her after the incident. Later, in the NRT office at the East Vancouver Precinct, Conroy confronted Wilken, telling him that he had really embarrassed her. Wilken responded, "I know!"

On July 17, 2008, Wilken, Sgt. Chylack and Conroy were in a cubicle at the NRT office at the East VPD station. Wilken was harassing Conroy. Conroy was embarrassed and upset. Conroy confronted Wilken, which Conroy had found to be an effective, though temporary, way to get Wilken to leave her alone. As Conroy was telling Wilken to stop his crude behavior, Wilken walked over to Conroy's desk, picked up her handcuffs and handcuffed Conroy's right hand to the arm of the chair she was sitting on. Wilken threw the handcuff key out of the cubicle. Conroy repeatedly attempted to pull her hand out of the handcuff and repeatedly told Wilken to let her go. Conroy told Wilken she was claustrophobic. In response, Wilken walked over and tightened the handcuff around Conroy's wrist, making it impossible for Conroy to be released without the handcuff key. Using her feet to push the chair, Conroy maneuvered towards Sgt. Chylack, whose back was turned to her. Conroy asked Sgt. Chylack for a handcuff key. Sgt. Chylack laughed, and told Conroy that he "didn't have a key". Wilken walked over to Conroy, while Conroy was in front of Chylack's desk, and handcuffed Conroy's free hand to the other arm of the chair. Wilken then pushed the chair and Conroy around the office, despite Conroy's protests and pleas to be released. Sgt. Chylack did nothing.

Wilken pushed Conroy, still handcuffed to her chair, into the men's locker room sleeping area, and left her in the dark, unlit men's locker room. Wilken walked out, leaving Conroy chained to the chair. Conroy worked the chair towards the door, worked the door open and got herself out of the locker room. As she left the locker room, Conroy saw Sgt. Dave Henderson and asked him to help her get uncuffed from the chair. Sgt. Henderson reached for his keys and asked what was going on. Wilken told Sgt. Henderson "I'm just joking with her". Sgt. Henderson told Wilken to "knock this shit off, it's not funny." Sgt. Chylack came around the corner and said "get her uncuffed". The incident was reported to Lieutenant John Chapman.

Conroy had had enough. Wilken's inappropriate and harassing behavior would not stop, even after confrontation. Despite multiple witnesses to Wilken's assaults on Conroy, no one did anything. Conroy filed a complaint. Conroy went through two interviews with the Major Crimes

3

Unit, but nothing was done. Conroy voluntarily underwent a third interview, this time with VPD IA investigators. Nothing has been done, despite the passage of more than ten months since her complaint.

Since filing her complaint, Conroy has been advised that Wilken, well-known within VPD for publically defecating on request without any official reprimand or discipline for his actions, defecated in a search warrant home and stuck a D.O.C. business card in the feces.

After Conroy filed her complaint, the Department of Corrections removed her from her station for her safety. Conroy is now fearful of retaliation by other officers because she still has city cases that she supervises and believes that when she is in the city of Vancouver, she will receive delayed or no back-up from Wilken's officer friends and supporters, and that the VPD command staff has taken little action to correct Wilken's behavior. Conroy is aware of how other officers have had delayed back-up in similar situations.

**Claimant's injury:**

Tanis Conroy has experienced significant emotional trauma including stress, difficulty falling asleep, nightmares, sleep interruptions, anxiety, intrusive thoughts, fear of retaliation, diminished self worth and other psychological and physical symptoms. Tanis Conroy has further experienced damage to reputation.

**Legal Basis:**

29 U.S.C. § 206(d); 42 U.S.C. § 2000e, *et seq* (Title VII of the Civil Rights Act of 1964), RCW 49.60.010, *et seq* (Washington Law Against Discrimination); RCW Chapter 41.24; and common law tort claims including negligent retention, negligent supervision, assault, battery, public policy tort, battery with sexual motivation, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress, and outrage.

**Amount of damages claimed:**

Ms. Conroy cannot presently calculate her total damages, which are ongoing. Solely for purposes of permitting the City and its insurers to set a reserve adequate to pay Ms. Conroy's damages, related fees and costs, and such other amounts as may be claimed, complainant's counsel identifies a sum of $500,000.

DATED: June 15, 2009.

/s/ Thomas S. Boothe
Thomas S. Boothe, WSB No. 21759
Attorney for Claimant
7635 SW Westmoor Way
Portland, OR 97225-2138
(503) 292-5800
tsb@boothehouse.com

4

STATE OF OREGON     )
                    ) ss:
County of Washington )

    I declare under penalty of perjury that the foregoing Tort Claim Notice: Tanis Conroy is true and correct to the best of my knowledge, information and belief.


Tanis Conroy

SUBSCRIBED and SWORN to before me this 15th day of June, 2009.

OFFICIAL SEAL
EMILY J SMITH
NOTARY PUBLIC - OREGON
COMMISSION NO. 436820
MY COMMISSION EXPIRES FEB. 22, 2013

Notary Public – Oregon
My commission expires: February 22, 2013

Conroy.T (Tort Claim Notice)

5